FANNIE SADOFSKY, ADMINISTRATRIX AD PROSEQUEN-
DUM OF THE ESTATE OF HERMAN SADOFSKY, DE-
CEASED, AND FANNIE SADOFSKY, INDIVIDUALLY,
PLAINTIFFS, v. WILLIAM FRAIN, DEFENDANT.

Submitted May 18, 1929—Decided November 15, 1929.

Before Justices TRENCHARD, LLOYD and CASE.

For the rule, *Thomas H. Hagerty* (*Charles H. Rooney,* of counsel).

*Contra, David T. Wilentz.*

PER CURIAM.

This action is brought by Fannie Sadofsky as administra-
trix *ad prosequendum* of the estate of Herman Sadofsky,
deceased, and Fannie Sadofsky, individually, to recover dam-
ages for the death of Herman Sadofsky and for personal in-
juries to hereslf caused by the defendant's automobile strik-
ing the automobile in which plaintiff and Herman Sadofsky
were passengers on the Lincoln highway near the Stelton
road in Raritan township, Middlesex county, between mid-
night and twelve-thirty A. M. on July 10th, 1927.

The defendant denies all knowledge of the accident and

alleges that at the time of the accident he was in Jersey City, the implication being that his automobile was stolen.

The case was tried before Judge Daly and a jury in the Middlesex Circuit. At the trial the claim of Fannie Sadofsky individually was abandoned and the *postea* discloses a verdict in favor of Fannie as administratrix *ad prosequendum* for $20,000.

The defendant obtained this rule to show cause why a new trial should not be granted and the reasons argued are because, first, the court erroneously refused to direct a verdict in favor of the defendant, and secondly, the verdict of the jury is against the weight of the evidence.

We think that the court was not in error in refusing to direct a verdict in favor of the defendant.

Fannie Sadofsky testified that on July 10th, 1927, she and her husband were coming from Newark to their home in New Brunswick in an Oakland sedan; that shortly after passing the Stelton road on the Lincoln highway, a tire became flat, and her husband, Herman Sadofsky, took off the flat tire to fix it; that their car was parked on the dirt shoulder on the right side of the road, under a light; that the front and rear lights on their car were lighted; that they were struck from the rear in a crash which killed her husband and knocked the car quite a distance; that the car which struck them was a big car.

This testimony is corroborated by that of Henry Miller who testified that he was driving his automobile on the Lincoln highway towards New Brunswick shortly after midnight on July 10th, 1927; that shortly after leaving the Stelton road a car passed him going sixty to sixty-five miles an hour; that this car almost struck Miller's automobile in passing and the driver lost control of it, swerving to the right and hitting the Sadofsky car, knocking it off the road; that Miller stopped and saw that Mr. Sadofsky had been killed and then helped the other people out of the car; that he did not get the license number of the other automobile except that he saw the letter "H" on the license plate; that it was a big dark sedan occupied by a young man and a young

woman; that he found a front headlight at the scene of the accident which he gave to a policeman.

The testimony of Louis Mersky for the plaintiff, who was a passenger in the automobile of Henry Miller on the night in question, is practically the same as Miller's testimony.

Police Officer Guyette of Raritan township testified that he arrived at the accident shortly after the body of Mr. Sadofsky had been removed in a bus and found the Sadofsky car turned upside down in a field about twenty-five feet from the road; that Miller handed him a broken headlight of an automobile and he in turn delivered it to Trooper Cassidy.

Benjamin Taylor, the garage man, who towed in the Sadofsky car, found it in a field twenty-five feet off the road; he tested the front and rear lights of the car and found that they lighted.

This, substantially, is the evidence as to the negligence of the driver of the automobile which struck the Sadofsky car and killed Mr. Sadofsky.

The questions remaining then, first: Was the automobile which hit the automobile of the deceased at the time of the accident owned by the defendant Frain; and, secondly, if such automobile was owned by Frain, was it being driven by him or his agent at the time of the accident?

It seems undisputed that the Sadofsky car was struck by a large dark sedan in which there was a man and a woman, the license plate of which began with the letter "H;" that a broken headlight was found at the scene of the accident.

Howard Dooley testified that he saw a dark green car going from the direction of the accident towards New Brunswick between twelve-thirty and one A. M., July 10th, 1927; that the car looked like either a Cadillac or a Lincoln and that there was a fellow and girl in the car and that they were sitting in a reclining position; that the bumper or something was hitting the road, causing sparks; that he saw the same car the next day, or two days after, in Taylor's garage on the Lincoln highway.

John Hoffman, a police officer in Highland Park, testified that he saw a big dark closed car pass him about one A. M.,

July 10th, 1927. A man and a woman were in the car and the right front, right fender and bumper on the car were damaged.

Fred Shedig, a police officer in Highland Park, testified that he observed the car on the same night and that it made a noise like a fender rubbing a tire and that the light on the right hand side was broken.

Harry Solowey testified that he was reading in the sun room of his home in Highland Park shortly after one A. M., July 10th, 1927; that he heard a noise on the street, looked out and saw a big car stop and two people get out; that the man carried a satchel; that he found that this car was blocking his driveway; that he notified the police who removed the car, which was a Lincoln sedan damaged in the front; that the license number was H 20940.

Louis Weinzeick testified that he was sitting outside of his home in Highland Park about one A. M., July 10th, 1927; that he saw a large car stop near Mr. Solowey's; that about four minutes later a man and a woman passed his house, coming from the direction of the car; that the man carried a satchel.

Robert Eddy, a police officer of Highland Park, was called to Solowey's home July 10th, 1927, and found a Lincoln sedan, license number II 20940, with the right front headlight missing and the bumper and radiator bent; that he had the car removed to Taylor's garage.

Officer Grandjean of the Raritan township police identified the headlight found at the scene of the accident and stated that it had been turned over to him by Trooper Cassidy, and the headlight was admitted in evidence.

Albert Davis, chief of the Raritan township police, testified that he went to Taylor's garage and found that this headlight fitted the Lincoln sedan H 20940 and that it belonged to this car; that the defendant Frain claimed the Lincoln car as his own.

William W. Dougal testified that he towed the car to Jersey City for the defendant, Frain.

A certified copy of registration license No. H 20940 issued

to William Frain for a Lincoln sedan was admitted in evidence.

Surely the jury was justified in inferring from these circumstances that this sedan was physically involved in the accident which caused Sadofsky's death. The circumstances disclosed by this testimony make such an inference practically inevitable and this does not seem to be in serious dispute.

Now, the registration card showed Frain to be the owner of the vehicle. He claimed it to be his at the garage. He had it towed to his home in Jersey City. He does not deny that he owned it; and proof of ownership, without more, of an automobile driven upon a public highway raises a presumption of fact that the automobile was in the possession of the owner, if not personally, then through his servant, the driver. *Mahan* v. *Walker,* 97 *N. J. L.* 304; *Tischler* v. *Steinholz,* 99 *Id.* 149.

However, to rebut this presumption, defendant sets up an alibi. He states that he was not at the scene of the accident but was in Jersey City.

It is chiefly with respect to the presence of the defendant that he claims that the verdict was contrary to the weight of the evidence. We think it was not.

He testified in effect that in the early evening on the night of the accident he was in Jersey City riding about with his girl friend, in his Buick roadster, until about ten-thirty P. M., and then put his roadster in his garage, where he also kept his Lincoln car, and walked back to the girl's house; that he remained there until about midnight when he went to a restaurant and then home and to bed, where he stayed until he was awakened at eight-thirty the next morning by his landlady who brought in Mr. Hoffman, a police detective who took him to the station house where he was informed that his Lincoln car had been found near New Brunswick after having been involved in a fatal accident; that he stayed at the police station until twelve noon, when he left for his girl friend's house and had dinner; that later in the day he met Lieutenant Rockhill who questioned him and told him to be in New Brunswick the next day; that the next

day he came to New Brunswick with Mr. Gallagher and Mr. Rooney, his attorney, and went to Taylor's garage and identified the Lincoln car as his own, but denied all knowledge of the accident or of being at the scene thereof.

There was testimony of several witnesses produced by the defendant which corroborated in a way and to a certain extent defendant's testimony, but the impression left upon our minds by a careful examination of it is that for one reason or another it does not satisfactorily, and certainly does not conclusively, corroborate the defendant's story that he was not at the scene of the accident. Their testimony was much impaired, as to essential particulars, on cross-examination, as was also the testimony of the defendant himself.

Moreover, to controvert defendant's story, plaintiff produced Michael Horvath, a witness, who testified that about fifteen minutes of one A. M., July 10th, 1927, he left New Brunswick for his home in Highland Park; that in Highland Park a man and a woman stopped him and he picked them up; that they asked if he was going to Newark and received a reply in the negative; that the woman asked him to drive to the nearest railroad station whereupon he drove them back to the New Brunswick station. The witness identified the defendant, Frain, as the man he had picked up that morning. He further testified that the point where he picked them up was well lighted; that the woman had a big black hat on and a brown coat but that he did not get a good look at her and could not identify her, but that he did get a good look at the man; that when they got to the station, the defendant walked up to the station to inquire about a train, came back, took his grip and went up in the station; that Frain wanted to get to the station in a hurry; that the man he picked up and carried a little square valise and had on a dark blue single-breasted suit with a straw hat; that he had a broken nose; that it was a nice clear night.

Horvath's testimony was corroborated by Michael Herzog who testified that he saw Horvath, on the early morning of July 10th, 1927, stopped on the hill in Highland Park; that he then saw a couple walk towards the direction of Horvath's

car and about fifty to seventy-five feet away from it; that one of them carried a grip.

. We have exaxmined and carefully considered, not only the testimony to which we have referred, but all the other testimony, some of which throws additional light upon the problem in hand.

Our conclusion is that the jury was not only justified in finding, as it did, that the defendant owned and drove the car which inflicted the injury in question, but that the verdict was not against the weight of the evidence.

· The rule to show cause will be discharged, with costs.